UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Ijeoma C., | File No. 25-CV-4770 (JMB/ECW) |
| Petitioner, | |
| v. | |
| Pamela Bondi, *U.S. Attorney General*; Kristi Noem, *Secretary, U.S. Department of Homeland Security*; Todd M. Lyons, *U.S. Immigration and Customs Enforcement Acting Director*; Marco Charles, *Enforcement and Removal Operations, Acting Executive Director*; Eric Klang, *Sheriff, Crow Wing County Jail*, | **ORDER** |
| Respondents. | |

---

Kenneth U. Udoibok, Kenneth Ubong Udoibok, P.A., for Ijeonma C.

Ana H. Voss, United States Attorney's Office, Minneapolis, MN, for Respondents Pamela Bondi, Kristi Noem, Todd M. Lyons, and Marco Charles.

---

This matter is before the Court on Petitioner Ijeoma C.'s Emergency Motion for a Temporary Restraining Order (TRO) against Respondents Pamela Bondi, Kristi Noem, Todd M. Lyons, Marco Charles, and Eric Klang. (Doc. No. 4.)[1] For the reasons explained below, the Court grants the motion to the extent it requests an order prohibiting Respondents from transferring or transporting Petitioner out of the District of Minnesota while the Petition remains pending. The Court denies the remaining relief requested.

---

[1] The Court refers to Petitioner by first name and initial pursuant to District policy.

1

## BACKGROUND

Ijeoma C. is a noncitizen from Nigeria who entered the United States lawfully in 2017.  (Doc. No. 1 ¶ 15; *see also id.* ¶¶ 1, 2.)  She is the sole caregiver for her child, who is a United States citizen.  (*Id.* ¶ 17.)

She was convicted on April 19, 2023, in federal court for Conspiracy to Commit International Money Laundering.  (*Id.* ¶ 1.)  In connect with her conviction, she provided substantial assistance to the Government and, as a result, is in danger of retaliation from individuals engaged in fraud schemes.  (*Id.* ¶ 2.)  These individuals have threatened to kill her if she returns to Nigeria.  (*Id.*)

Ijeoma C. has filed a number of applications concerning her immigration status that remain pending.  She has applied for relief under the Violence Against Women Act seeking immigrant classification as an abused spouse of a United States citizen.  (*Id.* ¶ 18.)  She filed an application for asylum and for withholding of removal to Nigeria, as well as a request for protection under the Convention Against Torture, based at least in part on the threats she faces from certain Nigerian nationals.  (*Id.* ¶ 19.)  She has not yet had interviews or hearings on any of her applications.  (*Id.* ¶ 20.)

On December 4, 2025, United States Immigration and Customs Enforcement (ICE) took Ijeoma C. into custody.  On December 22, 2025, the Department of Homeland Security issued a Final Administrative Removal Order for her deportation to Nigeria, notwithstanding her pending applications. (Doc. No. 1-3.)  During her detention, she has not been afforded access to counsel.  (Doc. No. 1 ¶ 3.)

Ijeoma C. filed a habeas petition on December 23, 2025, which was assigned to the

undersigned on December 29, 2025. The Petition raises a number of challenges to her detention and to the removal proceedings against her, asserting that she is entitled to a bond hearing or release and that pursuant to 8 U.S.C. §§ 1227, 1231(b)(3) she cannot be removed to Nigeria. (Doc. No. 1 ¶¶ 18, 23; Doc. No. 4 at 6–8.) On December 30, 2025, Ijeoma C. filed the TRO, requesting an order prohibiting Respondents from transporting her out of this District, as well as an order prohibiting her removal to Nigeria. (Doc. No. 4 at 4 (requesting an order prohibiting removal and transfer); Doc. No. 6 at 4–5 (including prohibition of deportation and removal as well as requiring a bond hearing in the proposed relief).)

## DISCUSSION

Because the balance of the applicable factors favors prohibiting Respondents from transferring Petitioner out of this District while the Petition is pending,[2] the Court grants the motion for a TRO to the extent it requests this relief.

When considering a motion for a TRO, courts consider the following four factors: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981); *see also Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 665 (8th Cir. 2022) ("[T]he standard for analyzing a motion for a temporary restraining order is the same as a motion for preliminary injunction."). No one

---

[2] The Court ordered Respondents to file an expedited response to the Petition, and the Court anticipates issuing a decision on the Petition within ten days of receiving the response.

3

factor is determinative, and courts "flexibly weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene." *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 601 (8th Cir. 1999) (quotation omitted). The central question is whether justice requires preserving the status quo until the merits are determined. *See Dataphase*, 640 F.2d at 113. The moving party bears the burden to establish these factors. *E.g.*, *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

Here, the record before the Court at this time indicates that the factors weigh in favor of granting Ijeoma C.'s request to enjoin Respondents from removing her from this District pending the determination of her Petition. Justice requires keeping Ijeoma C. in this District until the merits of her underlying habeas action can be determined. If Respondents transfer her out of this District, she will suffer irreparable harm: she may lose access to counsel, she may no longer be able to participate in litigation, and her pending applications for asylum and withholding of removal, VAWA relief, and protection under the Convention Against Torture may be rendered moot. Further, based on the Final Administrative Removal Order, Ijeoma C. is likely to be removed to a country, Nigeria, where she faces persecution and death threats. (Doc. No. 1-3; *see also* Doc. No. 1 ¶¶ 2, 16.) These are injuries that are concrete and imminent and that cannot be remedied after they occur. "Although access to effective counsel is not a constitutional right in a civil proceeding, the Court agrees that deprivation of access to retained counsel is plainly harmful to a litigant since it handicaps his ability to effectively present his case to the court." *Escalante v. Bondi*, No. 25-CV-3051 (ECT/DJF), 2025 WL 2212104, at *2 (D.

4

Minn. July 31, 2025), *report and recommendation adopted O. E. v. Bondi*, 2025 WL 2235056 (D. Minn. Aug. 5, 2025). Preserving Ijeoma C.'s access to judicial review, preventing unlawful detention, and preventing unlawful deportation are compelling and irreparable harms. *E.g.*, *Fuentes v. Olson*, No. 25-CV-4456 (LMP/ECW), 2025 WL 3524455, at *6 (D. Minn. Dec. 9, 2025) (finding that "unlawful detention is a prime example of irreparable harm" (citing *Matacua v. Frank*, 308 F. Supp. 3d 1019, 1025 (D. Minn. 2018)).

By comparison, there is no indication that Respondents will experience any harm from an order temporarily prohibiting her transfer out of this District while this action is pending. *Hoque v. Trump, et al.*, No. 25-CV-1576 (JWB/DTS), Doc. No. 15 (D. Minn. Apr. 22, 2025) (temporarily enjoining respondents from transfer out of district while habeas petition was pending); *see also Nebraska v. Biden*, 52 F.4th 1044, 1047 (8th Cir. 2022) ("[T]he equities strongly favor an injunction considering the irreversible impact [the challenged agency] action would have as compared to the lack of harm an injunction would presently impose.").

Likewise, the public interest served by deporting Ijeoma C. before her habeas petition is reviewed is outweighed by the interest of the public in ensuring due process, judicial review, and the rule of law.

Thus, these three factors[3] favor granting the TRO, to the extent it preserves the status

---

[3] At this time, Respondents have not yet provided the Court with any arguments or articulated their position on the Petition. The response is due on January 5, 2026. While the Petition presents some issues particular to Ijeoma C.'s status and circumstances, it also asserts that Respondents have detained her pursuant to 8 U.S.C. § 1225(b)(2), which

quo and prevents Respondents from moving Ijeoma C. out of this District.[4]

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT Petitioner Ijeoma C.'s Emergency Motion for a Temporary Restraining Order (Doc. No. 4) is GRANTED in part, as follows:

1. Respondents shall not remove, transfer, or otherwise facilitate the removal of Petitioner from this District.

2. No other person or agency shall remove, transfer, or otherwise facilitate the removal of Petitioner from this District on Respondents' behalf.

3. Respondents shall not prevent Petitioner from having necessary access to Counsel during the pendency of the Petition.

4. This Order is effectively immediately and shall expire fourteen days after the date of entry unless Petitioner shows good cause for its extension. In the event the Court determines that an extension of this fourteen-day period of time is necessary, the Court will set a briefing schedule by separate order.

Dated: December 30, 2025

/s/ *Jeffrey M. Bryan*
Judge Jeffrey M. Bryan
United States District Court

---

applies to persons seeking admission into the United States. Courts across the country have overwhelmingly rejected Respondents' interpretation of section 1225. *E.g.*, *Fuentes v. Olson*, 2025 WL 3524455, at *1 ("The Government has now been told nearly 300 times (and counting) that its mandatory-detention scheme is unlawful."). As with the other petitioners who have successfully challenged their continued detention on this basis, Ijeoma C. would be likely to succeed challenging Respondent's interpretation of section 1225. For this reason, and because the other three factors favor granting temporary relief, the Court need not address likelihood of success any further.

[4] The Court determines that a bond under Federal Rule of Civil Procedure 65(c) is not necessary because the TRO seeks to prevent constitutional deprivations and because Respondents face no identifiable risk of monetary loss. A bond is also not necessary because this matter is closely associated with important public interests. *See, e.g.*, *Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs*, 826 F.3d 1030, 1043 (8th Cir. 2016).